Hayden C. Jones, Jr., Plaintiff, *v.* Israel Packel, Robert Casey, Grace Sloan, Martin L. Murray, Thomas M. Nolan, Kenneth B. Lee, Robert J. Butera, Herbert Fineman, H. Jack Seltzer, Guy A. Kistler, Henry J. Cianfrani and Raymond Lederer, Defendants.

Argued June 2, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*H. David Spirt,* with him *Steven G. Laver,* for plaintiff.

*Norman J. Watkins,* Deputy Attorney General with him *Alan C. Warshaw,* Deputy Attorney General, and *Lawrence Silver,* Deputy Attorney General, for defendants, Packel and Sloan.

*Frank Adam Woelfling,* Deputy Counsel, with him *Frank P. Lawley, Jr.,* and *William H. Smith,* Chief Counsel, for defendant, Casey.

*A. Richard Gerber,* for remaining defendants.

PER CURIAM, August 1, 1975:

On June 8, 1949, plaintiff, Hayden C. Jones, Jr., was convicted on numerous bills of indictment, and sentenced to a term of fifteen to thirty years. Nineteen years subsequent to his incarceration, plaintiff petitioned for postconviction relief. The same was granted and plaintiff obtained his release from prison, the Court of Common Pleas of Allegheny County having found that plaintiff's conviction had resulted, at least in part, from perjured testimony.

On June 18, 1974, plaintiff filed a complaint in this Court, naming therein as defendants, the Attorney General of the Commonwealth, the Auditor General and Treasurer of the Commonwealth, as the "Board of Claims," and eleven members of the General Assembly. All of the named defendants responded by preliminary objections, essentially in the forms of demurrers, the dispositions of which are the subject of this opinion.

By this action, plaintiff seeks money damages arising from an alleged cause of action in tort, which cause of

action may be most appropriately described as one for false imprisonment. In the alternative, plaintiff requests relief in mandamus and/or equity, which, if granted, is intended to ultimately provide plaintiff with financial compensation.

In seeking a monetary verdict against defendants, plaintiff recognizes the bar presented by the principle of sovereign immunity.[1] Plaintiff perceives two routes to overcome the barrier it represents, one direct, the other ambagious.

First, plaintiff requests this Court to strike down sovereign immunity from the body of Pennsylvania law. Even assuming we were so disposed, we have repeatedly held that, as an inferior appellate court, we are bound by pronouncements of our Supreme Court.[2] The Supreme Court has consistently reaffirmed the vitality of sovereign immunity, and has determined that the discretion to effectuate change in this area lies not with the judiciary, but with the legislature. *See Brown, supra* note 1, and *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A.2d 849 (1973).

Article I, Section 11, of the Pennsylvania Constitution, in part, reads:

"Suits may be brought against the Commonwealth *in such manner, in such courts and in such cases as the Legislature may by law direct.*" (Emphasis added.)

In his complaint, plaintiff alleges that, on several occasions, the legislature has allocated funds from the State Treasury to compensate individuals who had suffered the

1. *See* Pa. Const. art. I, §11, and *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973), interpreting same.

2. *Williams v. Commonwealth,* 12 Pa. Commonwealth Ct. 384, 316 A.2d 685 (1974); *Duquesne Light Co. v. Department of Transportation,* 6 Pa. Commonwealth Ct. 364, 295 A.2d 351 (1972); *Lovrinoff v. Pennsylvania Turnpike Commission,* 3 Pa. Commonwealth Ct. 161, 281 A.2d 176 (1971).

same injustice as that suffered by plaintiff. Plaintiff argues that these "precedents" fashioned permanent legislative waiver of sovereign immunity, as contemplated by the Constitution, in actions for false imprisonment pursued against the Commonwealth. We disagree. The Constitution and the Supreme Court's interpretation thereof demand, for purposes of such a waiver, explicit legislative recognition of the right to sue the Commonwealth in such causes of action as specified and delineation of the procedures to be followed in the prosecution of such causes of action. While plaintiff's allegation of prior legislative practice may be factually accurate, it fails to support a conclusion that the legislature "by law" has consented to suits in false imprisonment against the sovereign. Alleged prior incidents of compensation merely reflect self-initiated legislative actions to correct what the members of a particular session of the General Assembly viewed as isolated instances of injustice; the General Assembly neither recognized a justiciable cause of action nor a court and manner in which to prosecute it. Thus, the demurrer as to plaintiff's claim in false imprisonment must be sustained.

Alternately, plaintiff would have us direct the various defendants to fulfill what plaintiff regards as their respective and clearly mandated duties, the performance of which arose upon defendants' receipt of notice of the facts supporting plaintiff's claim.

> "[M]andamus is an extraordinary writ which lies to compel the performance of a ministerial act or a mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy."[3]

Plaintiff asserts that the conditions precedent to the maintenance of an action in mandamus exist with respect to

---

3. *Valley Forge Racing Association, Inc. v. State Horse Racing Commission*, 449 Pa. 292, 295, 297 A.2d 823, 824-25 (1972).

the Attorney General, the Auditor General and the Treasurer, as the "Board of Claims," and the eleven members of the General Assembly named as defendants herein.

The Attorney General, as head of the Department of Justice, is under a statutory duty "(a) [t]o investigate any violations, or alleged violations, of the laws of the Commonwealth which may come to its [the Department's] notice."[4] In addition, section 905 of The Administrative Code, 71 P. S. §295, imposes upon the Attorney General the duty "to prepare, for submission to the General Assembly, from time to time, such revisions and codifications of the laws of this Commonwealth ... *as may be deemed advisable.*" (Emphasis added.)

Applying section 904 to the facts here alleged, we can find no "mandatory duty" upon the Attorney General to act on plaintiff's behalf. While section 904, on its face, appears to allow the Attorney General no discretion in his decision to "investigate any violations ... of the laws of the Commonwealth," it imposes no investigative duty whatsoever where injustices are *not* violative of the Commonwealth's laws. Under the current status of the law, the Commonwealth's allegedly wrongful incarceration of plaintiff, though abjectly distasteful, offers plaintiff no cognizable relief.

For a different reason, section 905 also provides plaintiff no solace. The duties set forth in that section are fully discretionary in nature ("as may be deemed advisable") and are, therefore, not the proper subjects of an action in mandamus. *Valley Forge Racing Association, Inc., supra.*

Plaintiff's prayer for relief in mandamus against the Auditor General and the Treasurer as the "Board of Claims," is equally vulnerable. The establishment of the

---

4. Section 904 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, 71 P.S. §294.

"Board of Claims" and its jurisdiction are set forth in two statutory provisions, both of which define said jurisdiction in terms of *claims provided by or recognized by the laws of the Commonwealth.*[5] Since plaintiff's claim for money damages arising from a cause of action against the sovereign for false imprisonment is not so provided or recognized, the Board of Claims is not duty bound to act upon it, and this Court may not mandate that it do so.

Plaintiff's third prayer in mandamus would have us order the eleven named members of the General Assembly "to pass appropriate legislation to provide compensation for plaintiff's claim and to establish a board to hear moral claims against the Commonwealth."

While encroachment by the judicial branch upon legislative power and authority experienced in the recent past has, to a limited extent, eroded the historical concept of separation of powers, we are aware of no decisions in which the judicial branch has mandated a legislative body to act in its purely legislative domain. Here, plaintiff would have this Court direct but a few members of the General Assembly to do that which they themselves cannot do without the approval of the majority of their colleagues and to enact legislation on a given subject, a judicial act which would be a flagrant infringement upon a purely legislative matter and a complete negation of the principle of separation of powers. The judicial branch of the government is without any power or authority to so act.

To summarize, in none of the three instances considered can plaintiff establish the existence of the conditions precedent essential to the maintenance of an action in mandamus.

Plaintiff's fifth and final prayer for relief, which is couched in terms of mandamus but is properly character-

---

5. Section 7 of the Act of March 30, 1811, P.L. 145, 72 P.S. §4087, and Section 1003 of The Fiscal Code, Act of April 9, 1929, P.L. 343, 72 P.S. §1003.

ized as injunctive in nature, seeks an order of this Court restraining defendants from compensating persons similarly situated to plaintiff, unless and until plaintiff's claim is satisfied. However, properly characterized, this Court is powerless to usurp and/or impede the exercise of constitutionally delegated legislative and executive powers. This concept of prior restraint advocated by plaintiff is clearly an anathema in a system structured upon the division and delegation of powers among three independent and coequal branches of government. We must summarily dismiss any suggestion to the contrary.

ORDER

Now, August 1, 1975, the preliminary objections of all the defendants are hereby sustained and the complaint is dismissed.