**CITY OF PITTSBURGH, Appellant**

v.

**Matthew BARTUS.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2005.
Decided Dec. 28, 2005.

Diego Correa, Pittsburgh, for appellant.

Ronald A. Berlin, Pittsburgh, for appellee.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The City of Pittsburgh (City) appeals the decision of the Court of Common Pleas of Allegheny County (trial court) ordering the reinstatement of Matthew Bartus to his employment with the City. The trial court held that the City's Civil Service Commission erred in applying the seniority and furlough provisions of the collective bargaining agreement (CBA) that covered Bartus instead of the comparable provisions in the General Civil Service Act. Having held in a companion case that the error was that of the trial court, not the Civil Service Commission, we reverse.

On August 15, 2004, Matthew Bartus, a painter in the City's Department of General Services and a member of the Pittsburgh Joint Collective Bargaining Committee (Union),[1] was among several hundred City employees notified of his pending layoff from his position with the City. In its notice to Bartus, the City stated that his layoff was necessitated by a shortage of operating funds. The notice advised Bartus that he had the "right to appeal [his] layoff to the Civil Service Commission ... or through the grievance procedure of your collective bargaining agreement." Reproduced Record at 1a. (R.R. ——).

In determining which employees would be laid off, the City applied the seniority and layoff provisions of the collective bargaining agreement (CBA)[2] to employees that were members of the Union. The CBA provides that the City must lay off employees by job title and individual department, in reverse order of seniority, within three separate seniority units, consisting of laborers, drivers and crafts. Section 8(E)(2) of the CBA, R.R. 36a–37a. In contrast, the layoff provisions in the General Civil Service chapter of the Second Class City Code (Civil Service Act), Act of May 23, 1907, P.L. 206, *as amended*, 53 P.S. §§ 23431–23462, provide that the last City employee appointed is the first to be laid off, without regard to job title or classification. Section 20.1 of the Civil Service Act, 53 P.S. § 23454.[3]

Bartus filed an appeal with the Pittsburgh Civil Service Commission to challenge the City's action. Bartus did not claim that his furlough violated the CBA; rather, he contended that it violated the Civil Service Act, which protected him against furlough by virtue of his length of service. He noted that many City employees, with far less service, were unaffected by the layoff. Further, he questioned whether the reductions were based strictly on economic reasons.

In an opinion consolidating the appeals of Bartus and those of eleven employees covered by the CBA, the Civil Service Commission upheld the City's furlough of Bartus. It concluded that the CBA, not the Civil Service Act, governed layoffs. Accordingly, years of service in a particular classification, not years of service in the

1. The Union has filed an amicus curiae brief in support of the City's appeal.

2. The CBA provides union members with the option to address complaints or disputes under the Agreement's grievance process or through Civil Service appeal process if appropriate. Section 5(E) of the Agreement, R.R. 26a.

3. Added by the Act of June 20, 1947, P.L. 663.

abstract, determined the order of layoff. In so ruling, the Commission relied upon "the judicially mandated preference for [applying] the terms of the collective bargaining agreement," which gives deference to the intent of the parties and the bargaining process. Civil Service Commission Opinion at 4.

Bartus appealed to the trial court. Upon review of the reproduced record of the Civil Service Commission proceeding prepared by the City, Bartus discovered that the City had included deposition testimony about the economic conditions of the City from an unrelated proceeding. Bartus filed a motion to excise the deposition from the record, which was granted. At the same time, the appeal was reassigned and scheduled for argument with another appeal, i.e., *Paul A. Abel, et al. v. City of Pittsburgh,* SA 04–00292. Without addressing the merits of whether the City proved that Bartus' termination was for economic reasons, the trial court reversed on the same grounds that it had reversed *Abel.* Specifically, the trial court held that the seniority provisions of the Civil Service Act, not the CBA, governed Bartus' layoff.

■ On appeal to this Court,[4] the City argues the trial court erred in its choice of law because the Public Employe Relations Act (Act 195),[5] made layoff a matter of collective bargaining not limited by the Civil Service Act. It offers two supporting arguments. First, the City contends that Bartus, who enjoyed the benefits of the CBA, is estopped from contending that its

terms are superceded by the Civil Service Act, thereby requiring other Union members to be furloughed. Second, the City contends that under its home rule charter, it is authorized to adopt employee management systems inconsistent with the Civil Service Act, so long as they do not violate the Home Rule Charter and Optional Plans Law, 53 Pa.C.S. §§ 2901–2984, (Home Rule Law).[6] The City also challenges the trial court's grant of Bartus' motion to strike the evidence of the City's economic difficulties and then refusing to allow the City to supplement the record with that evidence.

■ This Court has addressed the issue of the conflict between the CBA and the Civil Service Act with respect to layoffs in *City of Pittsburgh v. Abel, et al.,* 175 C.D. 2004, filed December 21, 2005. We concluded that the seniority and layoff provisions of the CBA, not the Civil Service Act, govern layoffs. The same is true here. Further, the dispute over evidence of the City's economic condition is irrelevant where, as here, the layoff is governed by the CBA not the Civil Service Act.

The matter of the City's economy is referenced in Section 20.1 of the Civil Service Act. It states, in relevant part, as follows:

> *If for reasons of economy, lack of funds,* abolition of position or positions, or for any other reasons it becomes necessary for any city of the second class to reduce the number of employes then, *the city shall follow the following procedure:*

---

4. Our review over decisions of a local agency where the trial court takes no new evidence is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether the procedure before local agency was contrary to statute. *Mulberry Market, Inc. v. City of Philadelphia, Board of License Inspection Review,* 735 A.2d 761 (Pa.Cmwlth. 1999.)

5. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101–2301.

6. As an alternative theory for reversing the trial court on the merits, the City argues that this Court lacks subject matter jurisdiction to hear this matter because under Act 195, Bartus was required to submit his dispute to mandatory arbitration.

* * *

If the number of employes eligible for retirement under the pension fund of said city, if any, is insufficient to effect the reduction in number desired by said city, then the reduction shall be effected by suspending the last employe or employes *regardless of title or classification.*

53 P.S. § 23454 (emphasis added). In contrast, Section 8 of the CBA makes no mention of the City's economic conditions; it states as follows:

8. E. LAYOFFS

(1) *In the event of layoffs, the City shall reduce position(s) by job title and individual department.* The employees in the job title with the least continuous service in the seniority unit shall be subject to layoff under 8(E)(2) or transfer under 8(E)(3) whichever is applicable.

(2) The City shall layoff employees not in the laborers or drivers seniority unit by job title throughout the City in inverse order of continuous service in the seniority unit. The City shall layoff all other employees with the least continuous service in the same seniority until as the reduced position(s) from any department throughout the City, regardless of job title. No employee shall be laid off from a position in a job title that has not been reduced under 8(E)(1) if no senior employee eligible for transfer under § 8(E)(3) is qualified to fill the position.

Section 8(E)(1) and (2) of the CBA, R.R. 36a–37a (emphasis added).

Bartus places entirely too much emphasis on the introductory phrase, "If for reasons of economy, lack of funds ....," in Section 20.1 of the Civil Service Act, 53

P.S. § 23454. The phrase is merely descriptive of the reasons that will likely generate any employer's layoff. Its purpose is to distinguish an economic layoff from the discharge of an individual employee for cause. It does not require, or even authorize, the Civil Service Commission to adduce evidence on whether the City has a valid economic reason to institute a layoff or can solve its economic problems by other means. It is enough for the City to simply inform a civil service employee that his or her discharge is part of an economic plan and not because of misconduct by the employee.[7] The job of the Civil Service Commission in this type of discharge, or layoff, is to ensure that the manner of layoffs conforms to the standards in Section 20.1 of the Civil Service Act. Evidence of the City's economic difficulties is not material because it is not for the Commission to judge whether the City's economic troubles are sufficient to warrant a layoff.

However, even if we accepted Bartus' premise that the City must adduce evidence of its economic plight in a layoff undertaken pursuant to Section 20.1, it does not carry the day for him. The CBA, not the Civil Service Act, governs the layoff of Union members, including Bartus, and the CBA makes no mention of the City's economic state. Accordingly, the lack of evidence in the record on the City's economic conditions is of no moment to Bartus' challenge to his layoff.

Therefore, on the basis of our decision in *Pittsburgh v. Abel, et al.*, we reverse the trial court.

**ORDER**

AND NOW, this 28th day of December, 2005, the order of the Court of Common

---

7. The notice may limit the City in any appeal. For example, if the Civil Service Commission finds that the City did not follow the strict seniority rules in Section 20.1, the City can-

not switch its case to a discharge for cause. The City ought to be bound by its notice to the employee.

Pleas of Allegheny County dated April 4, 2005, in the above-captioned matter is hereby reversed.