**JEFFERSON COUNTY COURT APPOINTED EMPLOYEES ASSOCIATION, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2006.

Decided Dec. 7, 2006.

Jon Pushinsky, Pittsburgh, for petitioner.

Warren R. Mowery, Jr., Harrisburg, for respondent.

Gretchen K. Love, Pittsburgh, for intervenor, Jefferson County.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

The Jefferson County Court Appointed Employees Union (Union) petitions for review of the Pennsylvania Labor Relations Board's (PLRB) decision dismissing an unfair labor practices charge it brought against Jefferson County (County) for refusing to implement grievance settlements reinstating five court employees.

The Union consisted of all full-time professional and non-professional employees who were directly involved with and necessary to the functioning of the Court of Common Pleas of Jefferson County (Judiciary or trial court).[1] The County Commissioners (Commissioners) and the Union were parties to a collective bargaining agreement (CBA) effective January 1, 2004, through December 31, 2006, which listed the bargaining unit members by name along with their wages. The CBA acknowledged the statutory and constitutional authority of the Judiciary to hire, fire and supervise court employees.[2]

On January 5, 2004, a new board of Commissioners took office, and their first

---

1. Article Two of the CBA provided:

   Section 1: The bargaining unit consists of all full-time professional and non-professional employees who are directly involved with and necessary to the functioning of the Courts and who are hired, fired and directed by the Courts, including but not limited to court reporters, clerks in the magistrates' offices, clerks in domestic relations, assistant directors in domestic relations, clerks in probation and probation officers in probation; and excluding management level employees, supervisors, first level supervi-

   sors, confidential employees, law clerks and guards as defined in Act 195.
   Section 2: The following persons shall be excluded from the bargaining unit:
     (A) Persons employed for the summer or other seasonal periods.
     (B) Persons employed for short and ascertainable periods.
     (C) Persons not identified on the salary scale.
   (Reproduced Record at 15b–16b.)

2. The Preamble to the CBA provided that it was "the inherent right of the court to hire,

order of business was to prepare the County budget. Because taxes were already being levied to the limit permitted by law, the Commissioners petitioned the trial court for authority to raise taxes beyond its statutorily authorized limit to fund an anticipated $1.7 million deficit. When this request was denied, the Commissioners reduced budget appropriations for various departments. In implementing those reductions, the County Salary Board [3] (Salary Board) eliminated, among others, five court employee positions, but deferred to the President Judge of the trial court the selection of the particular court employees to be laid off.

The five laid off court employees filed grievances [4] with their respective supervisors claiming that the Salary Board's elimination of their positions violated the CBA. Each contended that because they were individually and personally named in the CBA with their corresponding salary, their employment was guaranteed until the CBA expired. Each supervisor then sent written correspondence to the President Judge informing him that the court employees should be reinstated.[5] The President Judge forwarded the supervisors' letters to the Commissioners, along with written correspondence that the CBA had been violated and that the court employees should be reinstated. The Union also requested that the court employees be reinstated because their grievances had been sustained, but the County rejected this request indicating that it did not agree that an enforceable grievance settlement existed.

discharge and supervise the employees comprising the bargaining unit." Article Two provided that bargaining members are "hired, fired, and directed by the Courts." Article Six provided that "the collective bargaining process must not infringe upon the Judge's authority to select, discharge and supervise Court personnel." (Reproduced Record at 15b and 17b.)

3. The PLRB's Proposed Decision and Order at Finding of Fact No. 6 provided:

The County's salary board consists of the three county commissioners, the county treasurer and the department head of the department that will be affected by a particular decision of the salary board. The president judge of the court of common pleas is the department head for the court-appointed bargaining unit represented by the [Union]. Thus, for purposes of deciding whether to eliminate positions within the court-appointed unit in March 2004, the salary board consisted of the county commissioners, the treasurer and the president judge. The president judge voted not to eliminate the positions.

4. The grievance procedure set forth in Article Twenty–One of the CBA consisted of four steps. Step one allowed an employee to submit a written grievance to his immediate supervisor who was to try and resolve the grievance between the employee and management. Step two involved the employee's department head. Step three involved an appeal of the department head's decision to the Commissioners' designee for a hearing. Step four allowed the employee or the Union to initiate a request for arbitration pursuant to the requirements of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301. The Commissioners did not have the right to appeal during any stage of the proceedings or to request arbitration. The CBA also provided that an employee's failure to proceed to a subsequent step indicated that the grievance had been satisfactorily resolved. (Reproduced Record at 27b–30b.)

5. District Justices David Inzana, Douglas Chambers and Richard Beck agreed with their respective employees' positions that the Salary Board's actions violated the CBA. Chief Juvenile Probation Officer Paul Ruffner wrote that he agreed with "the basic premise" of his employee's position. Chief Adult Probation Officer Larry Straitiff wrote that he agreed that elimination of the position "may be a violation" of the CBA and that he was unable to resolve the grievance. (Reproduced Record at 41b–45b.)

The Union filed with the trial court a petition to implement the binding grievance decisions and to compel reinstatement. Finding that the written determinations of the supervisors and the President Judge constituted binding grievance awards enforceable under Section 7313 of the Uniform Arbitration Act (UAA), 42 Pa.C.S. § 7313; the Commissioners violated The County Code (County Code)[6] by eliminating the court employee positions; and the elimination of the court employee positions created a constitutional impairment to the ability of the Judiciary to administer justice, the trial court ordered the County to reinstate the court employees. The County then appealed to this Court, and we reversed, finding that the trial court erred by improperly characterizing step one and step two determinations made prior to reaching binding arbitration at step four as "awards" under the UAA, and that the PLRB had exclusive jurisdiction to decide whether determinations at step one and step two were enforceable. *See Jefferson County Court Appointed Employees Association v. Jefferson County Commissioners* (Pa. Cmwlth., No. 1850 C.D.2004, 872 A.2d 281 filed March 29, 2005).

■ Subsequent to filing its petition seeking reinstatement, the Union filed an unfair labor practice charge with the PLRB alleging, among other things, that the County, through the Commissioners, violated Sections 1201(a)(1) and (5) of the PERA, 43 P.S. § 1101.1201(a)(1) and (5),[7] by refusing to comply with the grievance settlements calling for reinstatement of the court employees. After a hearing, the PLRB hearing examiner issued a proposed decision and order finding that the County committed an unfair labor practice by failing to implement the grievance settlements. The County filed exceptions arguing that the grievance decisions were not binding grievance settlements and enforcement of them would violate the separation of powers doctrine by usurping its legislative function of appropriating funds for operation of each county agency. Agreeing with the County, the PLRB granted the exceptions and dismissed the charge, finding that the grievance settlements were outside the Judiciary's function to settle because the layoffs flowed from the County's control over its budget. This petition for review by the Union followed.[8]

Regardless of whether the eliminations were motivated by budgetary concerns, the Union contends that the PLRB erred in dismissing its unfair labor practice charge as not grievable. It contends that the settlement of those grievances placing the five laid off employees back to work did not usurp the Commissioners' powers

---

**6.** Section 1620 of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 1620.

**7.** Sections 1201(a)(1) and (5) of the PERA provide:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

* * *

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of em-

ployes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.
(Footnote omitted.)

**8.** Our scope of review of a final order of the PLRB is limited to determining whether there was a violation of constitutional rights, whether an error of law was committed or whether the necessary findings were supported by substantial evidence. *Wilkes–Barre Township v. Pennsylvania Labor Relations Board,* 878 A.2d 977 (Pa.Cmwlth.2005).

because they had, under the terms of the CBA they negotiated, placed in the Judiciary the authority to resolve all grievances involving the hiring, firing and supervising of its employees. Because the Commissioners provided the Judiciary in the CBA the authority to settle grievances, the Union contends that grievance settlements are valid and enforceable, and the County's refusal to implement them constitutes an unfair labor practice.

■■■■ In advancing its position, the Union relies on *Moshannon Valley School District v. Pennsylvania Labor Relations Board*, 142 Pa.Cmwlth. 270, 597 A.2d 229 (1991). In that case, a school administrator sustained a teacher's grievance of her suspension, and no appeal was taken. Even though the school board opposed the settlement, we held that the grievance was binding against the school district and could be enforced because the school administrator had jurisdiction to settle the grievance under its CBA.[9] The question, here, then becomes whether the Judiciary had the jurisdiction to settle a grievance of an "economic layoff."[10] To resolve that issue, an examination of the division of collective bargaining responsibilities involving court employees between the County, through the Commissioners, to adopt and implement a budget for the County's judicial branch and the Judiciary's inherent right to hire, fire and supervise its employees is required.

Under Section 1620 of the County Code,[11] the County is given the power to represent the Judiciary in negotiations with its unionized employees, so long as the exercise of such jurisdiction does not impair the independence of the judiciary. Specifically reserved under this provision is the Judiciary's right to hire, fire and supervise its employees. *County of Lehigh v. Pennsylvania Labor Relations Board*, 507 Pa. 270, 489 A.2d 1325 (1985); *Troutman v. Pennsylvania Labor Relations Board*, 735 A.2d 192 (Pa.Cmwlth. 1999). When negotiating matters that impact the court's right to hire, fire and supervise its employees, the commissioners bargain on behalf of the court and must consult with it; otherwise, any contractual provision dealing with these matters is deemed unenforceable. *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978). After the levels of compensation are negotiated and included in the collective bargaining agreement, under

---

9. In this case, though, the Union had the burden of proving that it had binding grievance settlements. The complainant in an unfair labor practice proceeding has the burden of proving by substantial and credible evidence each element of its charge. *Delaware County Lodge No. 27, Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 694 A.2d 1142 (Pa.Cmwlth.1997).

10. An economic layoff is where an employee is discharged for lack of funds as distinguished from a discharge for cause. *City of Pittsburgh v. Bartus*, 889 A.2d 660 (Pa. Cmwlth.2005).

11. Section 1620 of the County Code, provides, in relevant part:
    The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the [Salary Board].... [W]ith respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the [Commissioners] shall have the sole power and responsibility to represent [the Judiciary], the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the [Commissioners] shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the [Judiciary] or other county officers.
    16  P.S. § 1620.

Section 1623 of the Code,[12] the Salary Board is to exercise its administrative function to set the number of positions paid out of the county treasury. By reserving budgetary matters to the Commissioner's discretion, including the power to tax and appropriate funds, and to the Judiciary the right to hire, fire and supervise court employees, Section 1620 of the County Code sets forth a framework of collective bargaining that does not violate the doctrine of separation of powers. *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638 (1981); *Penksa v. Holtzman*, 153 Pa. Cmwlth. 94, 620 A.2d 632 (1993). It also sets the framework in determining who has jurisdiction to settle a particular grievance depending on whose interest is implicated—the County's budgetary concerns or the Judiciary's control over the hiring, firing or supervising of its employees.

■ In this case, the grievance did not implicate the Judiciary's jurisdiction to settle a matter over which it has jurisdiction under the CBA. A grievance is defined in the CBA as "a dispute concerning the interpretation, application or alleged violation of this agreement." (Reproduced Record at 27b.) Under the framework set forth above and the terms of the CBA itself, economic layoffs do not involve the

trial court's ability to fire its employees, i.e., to discipline employees, but rather the County's jurisdiction over its fiscal affairs, which is vested solely in the Commissioners.[13] In carrying out their responsibilities to have a balanced budget,[14] the Commissioners enacted a county budget reducing the level of funding for the Judiciary and other county agencies. The Salary Board, of which the President Judge was a member, was required to implement that budget by setting the number and salaries for court employees based upon the budget the Commissioners adopted. This resulted in the elimination of five positions in order to bring the budget in balance.

Because the Judiciary's grievance settlements did not involve in any way their right to hire, fire or supervise but intruded into the County's control over its fiscal affairs, the PLRB properly found that the County's refusal to implement them did not constitute an unfair labor practice because it was not within the Judiciary's jurisdiction to enter into those settlements.

■ Nonetheless, the Union contends that the grievance process was still proper because the CBA granted individualized employment contracts to each employee guaranteeing employment for the term of

12. Section 1623 of the County Code, 16 P.S. § 1623, provides, in relevant part:

The board, subject to limitations imposed by law, shall fix the compensation of all appointed county officers, and the number and compensation of all ... court criers, tipstaves and other court employes, and of all officers, clerks, stenographers and employes appointed by the judges of any court and who are paid from the county treasury.

13. Section 1701 of the County Code, 16 P.S. § 1701, provides:

The county commissioners shall be the responsible managers and administrators of the fiscal affairs of their respective counties in accordance with the provisions of this act and other applicable law.

14. Section 1783 of the County Code, 16 P.S. § 1783, provides:

The budget shall reflect as nearly as possible the estimated revenues and expenditures for the year for which it is prepared. The commissioners shall, upon adopting the budget, adopt the appropriation measures required to put it into effect, and shall fix such rate of taxation upon the valuation of the property taxable for county purposes as will, together with all other estimated revenues of the county, excluding operating, capital and other reserve funds, raise a sufficient sum to meet the said expenditures.

the contract. It argues that the CBA listed the bargaining unit members by name, along with their salaries, and contained language in Article Two that "[t]he bargaining unit consists of all full-time professional and non-professional employees who are directly involved with and necessary to the functioning of the Courts."

Ignoring that the Judiciary does not have the power to grieve economy layoffs and no unfair labor practice was made out, "[a collective bargaining agreement] is not ... a contract of employment ... [because] no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone." *J.I. Case Co. v. National Labor Relations Board*, 321 U.S. 332, 335, 64 S.Ct. 576, 88 L.Ed. 762 (1944). Here, the language in Article Two and the listing of court employees by name with their salaries did not give rise to guaranteed employment. Assuming that it could, the CBA lacked any express language showing that the parties intended to preclude court employees from ever being laid off; even so, such language would have infringed upon the Judiciary's statutory right to hire, fire and supervise its employees. Accordingly, the PLRB did not err in determining that the agreement was a CBA which did not guarantee the five laid off court employees employment.

■ The Union also contends that it has standing through the CBA's grievance process to compel the County to spend additional tax dollars to fund the five eliminated court employee positions because the bargaining unit members were necessary to the "administration of justice." Again, ignoring that the Judiciary had no authority to grieve this layoff, and we do not understand how such a claim relates to an unfair labor practice charge involving the enforcement of a grievance settlement, the Union neither has standing to claim the

"administration of justice" will be adversely impacted nor is that matter within the PLRB's jurisdiction. Because only the Judiciary is charged with the "administration of justice," only the Judiciary has standing to bring such an action. As our Supreme Court stated in *Snyder v. Snyder*, 533 Pa. 203, 209–12, 620 A.2d 1133, 1136–37 (1993):

Our analysis in [*Lavelle v. Koch*, 532 Pa. 631, 617 A.2d 319 (1992),] recognized that the exercise of the inherent judicial power to compel funding is reserved for exceptional cases in which a legislative act poses "a *genuine threat* to the administration of justice, that is, [there must be] a nexus between the legislative act and the injury to the judiciary, not merely a theoretical encroachment by the legislature." *Beckert v. Warren*, 497 Pa. 137, 147, 439 A.2d 638, 643 (1981); *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 438, 388 A.2d 730, 735 (1978); *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Bd.*, 479 Pa. 440, 447–48, 388 A.2d 736, 739–40 (1978). . . .

We emphasize that this Court cannot uncritically accept the evidence offered to establish the reasonable necessity of a court's salary requests. To the contrary, we must scrutinize any evidence and question any assertions that are made by the plaintiff court. See *Lavelle*, 532 Pa. at 636–37, 617 A.2d at 322. This critical approach flows from our overriding concern with preserving the separation of powers that distinguishes our tripartite form of government. . . . This allocation of governmental power is designed to avoid the tyranny that arises when absolute power is entrusted to a single body. The Federalist No. 47 (J. Madison).

We protect against the hazards of tyranny by invalidating acts by one branch which compromise the independent, co-

equal status of another. Thus, in certain circumstances, the legislature's refusal to provide funds requested by the judiciary is a separation of powers violation because the legislative act interferes with the administration of justice. By the same token, the judiciary commits a separation of powers violation if it exercises a legislative power. We run the risk of doing just that when we order the legislature to fund the judiciary. After all, the spending power resides exclusively with the legislature, and the only time the judiciary acquires the power to compel funding is when it cannot independently and adequately administer justice because the legislature has not provided it with the funds to do so. *Beckert v. Warren,* 497 Pa. at 144, 439 A.2d at 642; *Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 52, 274 A.2d 193, 197 (plurality opinion), *cert. denied sub nom. Tate v. Pennsylvania ex rel. Jamieson,* 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971); *Leahey v. Farrell,* 362 Pa. 52, 58, 66 A.2d 577, 579 (1949); *Commonwealth ex rel. Hepburn v. Mann,* 5 Watts & Serg. 403 (1843); *In re Surcharge of County Commissioners,* 12 Pa. D. & C. 471 (C.D. Lackawanna 1928) (Maxey, J.).

Because budgetary decisions that adversely impact the "administration of justice" can only be challenged in a mandamus action brought by the Judiciary, the PLRB did not err in dismissing this claim for lack of jurisdiction.

Accordingly, because the economic layoff at issue here was not within the Judiciary's jurisdiction to grieve, the PLRB properly dismissed the Union's unfair labor practice charge, and its order is affirmed.

### *ORDER*

AND NOW, this *7th* day of *December,* 2006, the final order of the Pennsylvania Labor Relations Board, dated October 18, 2005, at No. PERA–C–04–353–W, is affirmed.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the President Judge of the Court of Common Pleas of Jefferson County did not have jurisdiction to settle the grievances of five court employees challenging the County Salary Board's (Salary Board) elimination of their positions because the President Judge's decision in favor of the employees usurped the legislative budget-making function of the County Commissioners (Commissioners), a violation of the separation of powers doctrine. I cannot agree.

On August 13, 2003, the Commissioners and the Jefferson County Court Appointed Employees Association (Union) executed the CBA, governing full-time professional and nonprofessional employees who are "necessary to the functioning of the [c]ourts." (Findings of Fact, No. 3; R.R. at 15b, 32b–33b.) Article Twenty of the CBA lists the names and salaries of the bargaining unit members, **employees necessary to the functioning of the courts.** (R.R. at 26b.)

In formulating their budget for 2004, the Commissioners sought court approval to raise taxes, but the President Judge denied the petition. On March 8, 2004, the Salary Board eliminated five court positions that, under the CBA, were necessary to the functioning of the courts. The members of the Salary Board were the Commissioners, the County Treasurer and the President Judge. The President Judge voted **not** to eliminate the positions. (Findings of Fact, Nos. 5–6, 12.)

By letters dated March 15, 2004, the President Judge informed five court em-

ployees that their positions had been eliminated. The five employees filed grievances, which the President Judge settled in favor of the employees. When the Commissioners refused to reinstate the employees, the Union filed an unfair labor practice charge with the PLRB, which ultimately determined that the decision of the President Judge infringed on the legislative budgeting function in violation of the separation of powers doctrine.

The majority affirms the PLRB. However, in doing so, the majority does not consider that there is no infringement of the legislative budget-making function in cases involving expenditures that are necessary to the functioning of the courts and that, under *Franklin County Prison Board v. Pennsylvania Labor Relations Board*, 491 Pa. 50, 417 A.2d 1138 (1980), the elimination of the five court positions by the Salary Board in this case was ***not*** the performance of a legislative function by a legislative body.

## I. Necessary Positions

The judiciary has the inherent power to compel expenditures that are necessary to prevent the impairment of the exercise of the judicial power or of the proper administration of justice. *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638 (1981).

The only employees covered by the CBA in this case are those that are ***necessary to the functioning of the courts.*** Certain-

ly, the Commissioners knew with whom they were negotiating the CBA. Thus, once the Commissioners signed the CBA, they had to devise a budget that covered the employees and salaries listed in the CBA.[1] Otherwise, the Commissioners would have violated the separation of powers doctrine by infringing upon the inherent power of the judiciary to exercise the judicial power and to administer justice.

Because the Salary Board eliminated five court positions that were necessary to the functioning of the courts, I conclude that the President Judge did not infringe upon the legislative budget-making function in settling the grievance in favor of the five employees. I also conclude that, by refusing to comply with the President Judge's grievance decision, the Commissioners infringed upon the power of the judiciary to compel expenditures necessary to prevent the impairment of the exercise of the judicial power or of the proper administration of justice.

## II. Salary Board

The Salary Board is not a legislative body and does not perform legislative functions. Franklin County Prison Board. Indeed, the members of the Salary Board in this case included the President Judge, a member of the judicial branch, and the County Treasurer, a member of the executive branch. In this regard, our supreme court has stated:

> A We had to live with it.
> Q Did you take that language into consideration when the Salary Board made its decision to eliminate five members of the bargaining unit?
> A We knew the language was in there.
> Q And, was there ... an inquiry made as to whether or not an elimination of those positions would interfere with the administration of justice? ....
> A No, there was no direct inquiry.
> (R.R. at 133b–34b.)

---

1. Ultimately, in this case, the Commissioners who negotiated the CBA did not formulate the budget. Commissioner Paul Corbin, one of the Commissioners who did make the budget, testified as follows:
   > Q And, isn't it true that the ... Commissioners who signed onto this [CBA] had already made the determination that all of the bargaining unit members were necessary for the functioning of the courts....
   > A I can't speak for the previous Board of Commissioners....
   > Q But, you have to live with it, right?

[A] member of the executive branch of local government—either the county controller or the county treasurer where there is no controller—sits on the salary boards, further discrediting the notion that the salary boards are legislative bodies. The salary boards perform administrative functions only....

*Id.* at 61, 417 A.2d at 1143 (citation omitted).

Here, the President Judge rendered a decision relating to the Salary Board's elimination of five court positions, which was *not* a legislative function performed by a legislative body. It is true that the Salary Board eliminated the positions in implementing the Commissioners' budget, but the budget adopted pursuant to the legislative power *did not require* that the Salary Board eliminate *the se* five positions. Commissioner Paul Corbin testified as follows:

Q Could the Salary Board have eliminated five employees from other departments instead of the bargaining unit that consisted of necessary court employees?.... You could have told them to eliminate two positions instead of one, couldn't you?

A Sure.

Q And, they would have had to do it?

A Sure.

Q So, there was alternative ways for you to eliminate the same number of employees, correct?

A.... Yes.

(R.R. at 134b.) Clearly, then, when the Salary Board chose to eliminate five court positions, it was an administrative decision that was separate and distinct from the legislative budget-making power. If the Commissioners had reinstated the five court employees and their positions pursuant to the President Judge's grievance decision, the budget would *not* have changed.

The Salary Board simply would have been required to take further administrative action.

For the foregoing reasons, unlike the majority, I cannot conclude that the President Judge's grievance decision violates the separation of powers doctrine. Accordingly, I would reverse.

Judge McGINLEY joins in this dissent.