CONCURRING OPINION JUSTICE DONOHUE 1 agree with the Majority’s conclusion that a district attorney’s office is not a “judicial agency” for purposes of Pennsylvania’s Right-to-Know Law, 65 P.S. §§ 67.101-67.3104 (“RTKL”). I do not agree, however, with the Majority’s use of definitions taken from the Judicial Code and the Pennsylvania Rules of Judicial Administration (“PRJA”) in its attempt to define the term “judicial agency.” Contrary to basic principles of statutory interpretation, the Majority ignores the clear language of the Judicial Code and the PRJA with respect to the express limitations on the use of the definitions set forth therein. Moreover, the Majority offers no basis for concluding that the General Assembly intended for these definitions to apply when construing terms in the .RTKL. By their clear language,' the Judicial Code and the PRJA reflect that the definitions contained therein are intended to apply only to the defined terms contained in those statutes and rules. See 42 Pa.C.S. § 102 (“The following words and phrases when used in this title shall have, unless the context clearly indicates otherwise, the meanings given to them in this section....”) (emphasis added); Pa.R.J.A. 102 (“The following words and phrases, when used in these rules shall have, unless the context clearly indicates otherwise, the meanings, given them in this rule....”) (emphasis added). The Statutory Construction Act plainly instructs that when the words of a statute are unambiguous, we may not disregard “the letter of it” and must instead follow the explicitly stated legislative intent, 1 Pa.C.S. § 1921(a)-(b). The Judicial Code’s above-quoted language (“when used in this title”) is unambiguous, and must be followed as written. The same is true of the relevant language that this Court decided to use (“when used in these rulés”) when we promulgated the PRJA. This Court explained the proper application of the Statutory Construction Act with respect to statutory definitions in In re 2003 Gen. Election for Office of Prothonotary, 578 Pa. 3, 849 A.2d 230 (2004). This Court was required to interpret the word “verified” as used in section 1701 of the Election Code, pursuant to which a trial court will open a ballot box and order a counting of the ballots if three qualified electors file “a petition duly verified by them” alleging fraud or other computation error. 25 P.S. § 3261(a) (emphasis added). The Commonwealth Court looked to the definitions of “verified” in the Judicial Code and the Rules of Civil Procedure, and applied them to the disputed term in the Election Code. This Court reversed, emphasizing that “definitions ... in the Judicial Code and the Rules of Civil Procedure are only meant to apply to those statutory provisions or rules promulgated, respectively, as part of the Judicial Code or Rules of Civil Procedure.” In re 2003 Gen. Election, 849 A.2d at 237 (emphasis added). Instead, this Court employed the definition of “verified” in section 1991 of the Statutory Construction Act, as that provision held that the definitions set forth therein could be used “in any statute finally enacted on or after September 1, 1937.” Id. at 238 (citing 1 Pa.C.S. § 1991). Furthermore,. the Majority offers no sound basis for its apparent (but unexpressed) conclusion that the General Assembly, when enacting the RTKL, had any legislative intent to “borrow” definitions from either the Judicial Code or the PRJA to provide guidance on the meaning of terms used in the RTKL. There is no indication, in either the Judicial Code, the PRJA or the RTKL, that the General Assembly, in drafting the RTKL, intended for these definitions to be consulted to define terms in the RTKL. Instead, the Majority notes only that the use of the phrase “unified judicial system,” which is used in the definition of “judicial agency” in section 102 of the RTKL, is defined in the Judicial Code and the PRJA. Id. at 12. This coincidence does not equate with a legislative intent to use that definition when interpreting the RTKL. If we were left'with no other source for the meaning of the phrase, the Majority might be justified, as a last resort, > in .relying on the Judicial Code and our rules.[1] The definition of “unified judicial system” urged by Parks Miller, however, can be analyzed by reference to the RTKL itself and principles of statutory interpretation set forth in the Statutory Construction Act. Such analysis leads to the inescapable conclusion that the interpretation urged by Parks Miller is not supported by the language of the RTKL and also leads to an absurd and unreasonable result not intended by the General Assembly. While the Commonwealth Court has borrowed the definitions in the Judicial Code- and the PRJA to aid in the interpretation of the RTKL and other statutes,[2] this Court has never blessed this interpretive mechanism. As indicated above, this practice directly violates the Statutory Construction Act, as the unambiguous language of both the Judicial Code and the PRJA instruct that the definitions set forth apply only to terms set forth therein. 42 Pa.C.S. § 102; Pa.R.J.A. 102. My concern with the Majority’s disregard for this unambiguous instruction goes beyond the confines of this case. As demonstrated by my interpretive analysis herein, the outcome in this appeal is the same without the Majority’s fallback to the tainted definition sources. However, the Majority is signaling the acceptability of ignoring clear statutory interpretative direction, which in a future case may render a contradictory result. I will admit that the Majority’s approach is more convenient than analyzing the statute we are asked to interpret, but convenience and ease should not trump the express language of a statute or rule. I would apply straightforward principles of statutory interpretation to discern the intent of the legislature as to the disclosure requirement for district attorneys. Parks Miller claims placement under the RTKL as a “judicial agency,” which is defined as “[a] court of the Commonwealth or any office or entity of the unified judicial system.” 65 P.S. § 67.102. Parks Miller does not contend that her office is a court of the Commonwealth. Instead, she insists that her office is “an entity or office of the Unified Judicial System.”[3] Parks Miller’s Brief at 12. The phrase “ah entity or office” is not defined in the RTKL but the Pennsylvania Constitution makes clear beyond question that the unified judicial system is captured by Article V (“The Judiciary”). We need not grapple with the precise parameters of the phrase “entity or office” as used in the RTKL since in her brief filed with this Court, Parks Miller correctly identifies herself, in the context of our Constitution, as an “executive branch official.” Parks Miller’s Brief at 24 (emphasis added). As a result, under the RTKL, Parks Miller is not a “judicial agency” but rather is a “Commonwealth agency,” which the RTKL defines as “[a]ny office ... of the executive branch.” 65 P.S. § 67.102. The RTKL’s definition of “Commonwealth agency” makes clear that “ ‘Commonwealth agency' and “judicial agency” are mutually exclusive terms under the RTKL, as a ‘Commonwealth agency’ ,,. does not include a judicial or legislative agency.” Id, Unlike a judicial agency, for which the disclosure requirements under the RTKL are limited to the production of financial records, 65 P.S. § 67.304, all records in the possession of a Commonwealth agency are presumed to be public records available for access in response to a RTKL request (absent a statutory exception, privilege, or other law, regulation or court order). 65 P.S. §§ 67.301, 67.305, 67.701. By her own admission, Parks Miller is a Commonwealth agency and thus not entitled to the limited disclosure requirements under the RTKL reserved only for judicial agencies. Moreover, any ambiguity in the RTKL’s definition of “judicial agency” as including “an entity or office of the Unified Judicial System,” is clarified by the application of basic principles of statutory interpretation. For present purposes, the relevant principles under the Statutory Construction Act to interpret ambiguous terms include the requirement that we must presume that the General Assembly “does not intend a result that is absurd, impossible of execution or unreasonable.” 1 Pa.C.S. § 1922(1). Likewise, we must presume that the General Assembly “does not intend to violate the Constitution of the United States or of this Commonwealth.” 1 Pa.C.S. § 1922(3). First, an interpretation that district attorneys and their offices are “judicial agencies,” thereby limiting disclosure under the RTKL to financial records, would result in an absurd and unreasonable result plainly pot intended by the General Assembly. Under Article IY of the Penn-, sylvania Constitution (“The Executive”), the Governor, as the head of the executive branch of government, is tasked with the duty to “take care that the laws be faithfully executed,” and the Attorney General is the “chief law officer of the Commonwealth.” Pa. Const, art. IV, §§ 2, 4.1. Within this constitutional structure, this Court has stressed that district attorneys’ basic function, like the Attorney General’s, is the enforcement of the Commonwealth’s penal laws: Prior to 1850, investigation and prosecution of criminal offenses in Pennsylvania were exclusively the duty of the Attorney General of the Commonwealth, although in practice he delegated' this duty by. appointing- deputy attorneys general for the several counties. See Commonwealth ex rel. Specter v. Freed, [424 Pa. 508, 228 A.2d 382, 383-84 (Pa. 1967)]. In 1850 the General Assembly enacted legislation which provided for the election of these deputy attorneys general. The successor to that statute presently provides, in relevant part, that ‘(t)he district attorney shall ...' conduct in court all criminal and other prosecutions, in the name of the Commonwealth ,.. and perform. all the duties which, prior to May 3,1850, were performed by deputy attorneys general.’ Act of July 5, 1957, P.L. 484, s 1, 16 P.S. s 1402(a)[4] (Supp, 1969). If this statute means anything at all, it. means that district attorneys in this Commonwealth have the power — and the duty — to represent the Commonwealth’s interests .in the enforcement of its criminal laws Com. ex rel. Specter v. Bauer, 437 Pa. 37, 261 A.2d 573, 575 (1970) (footnote added); see also Chaffin v. Specter, 426 Pa. 464, 233 A.2d 562, 565 (1967) (stating that pros-' ecutorial “powers, functions, [and] duties” involve prosecution'Of crimes committed). In addition to section 1402(a) of the County Code specifically referenced by this Court in Bauer, the General Assembly has subsequently enacted the Commonwealth Attorneys Act, 71 P.S. §§ 732-101-732-506. Section 206(a) provides, in relevant part, that the “Attorney General shall be the chief law enforcement officer of the Commonwealth; the district attorney shall be the chief law enforcement officer for the county in which he is elected.” 71 P.S. § 732 — 206(a); see also Pennsylvania Gamefowl Breeders Ass’n v. Com., 122 Pa. Cmwlth, 52, 551 A.2d 361, 363 (1988) (“District attorneys are charged with conducting criminal prosecutions in the name of the Commonwealth, but only in the county in which the district attorney is elected.”) (emphasis omitted). Moreover, Article IX, Section . 4 of the Constitution'.identifies district attorneys as “county officials.” Pa. Const, art. IX, § 4, As such, both as a matter of constitutional and statutory law, the Attorney General and district attorneys serve the same governmental function (law enforcement) as geographical counterparts: the Attorney General is the chief law enforcement officer at the state level while district attorneys are the chief law enforcement officers at the local (county) level. Based upon this understanding of the role of district attorneys in Pennsylvania’s constitutional scheme, district attorneys and their offices are clearly not “judicial agencies,” as such an interpretation would constitute an absurd and unreasonable result plainly not intended by the General Assembly. Section 102 of the RTKL expressly names the office of the Attorney General as a “Commonwealth agency,” 65 P.S. § 67.102, and, as noted above, section 305 provides that all records in the possession of a Commonwealth agency are presumed to be public records available for access in response to a RTKL request (absent a statutory exception, privilege, or other law, regulation or court order). 65 P.S. §§ 67.301, 67.305, 67.701. Accordingly, if this Court were to interpret the RTKL’s definition of “judicial agency” to include district attorneys and their officers, then the chief law enforcement officer at the state level (the Attorney General) would be statutorily obligated to produce all public records in his or her possession, but the chief law enforcement officer at the local level (district attorneys) would have no corresponding statutory obligation to do so. By imposing full disclosure responsibilities on the office of the Attorney General, the General Assembly plainly recognized that the overall goal of the RTKL, namely, to promote openness and afford citizens access to information concerning the activities of their government officials, extends to those constitutionally and statutorily charged with the sovereign function of enforcement of the Commonwealth’s penal laws. If, however, as Parks Miller contends, district attorneys and their offices are “judicial agencies,” then the RTKL’s demand for open access to information would extend only to law enforcement officials at the state level but not, correspondingly, at the local level. Given the importance of the availability of public records relating to the practices of government officials in their interpretation and application of criminal statutes, such a result, which ignores entirely the parallel functions of the Attorney General and district attorneys, would be absurd and unreasonable.[5] Second, because Parks Miller is a member of the executive branch, her preferred interpretation of “judicial agency” in the RTKL would constitute an unconstitutional violation of the separation of powers doctrine. This Court reaffirmed the basic principles of the separation of powers doctrine in Jefferson Cty. Court Appointed Employees Ass’n v. Pa. Labor Relations Bd., 603 Pa. 482, 985 A.2d 697 (2009). This separation depends on two distinct concepts, as.embraced by the framers of both the federal and Pennsylvania constitutions: (1) no branch- may usurp a function belonging to another and each must operate within its own separate sphere of power; and (2) a system of checks and balances exists, which prevents one branch from acting unchecked. See [Loving v. United States, 517 U.S. 748, 757, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); Beckert v. Warren, 497 Pa. 137, 439 A.2d 638, 642 (Pa. 1981) ]. The allocation of these powers among the three branches of government serves to avert the danger inherent in the concentration of power in any single branch or body because “[t]he accumulation of all powers, legislative, executive, and judicial, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny.” Beckert, 439 A.2d at 642, citing The Federalist No. 47 (James Madison). Id. at 706-07; see also Beckert, 439 A.2d at 642 (“A basic precept of our form of government is that the executive, ¡the legislature and the judiciary, are independent, coequal branches of government,.. ¡ [N]o branch should exercise the functions exclusively committed to another branch.”). In In Re Act 147 of 1990, 528 Pa. 460, 598 A.2d 985 (1991), this Court held that the General Assembly violates the separation of powers doctrine if it attempts to place an official' from one branch of our state government into'another branch'of our state government. In Act H7, the General Assembly enacted a statute (Act 147) that purported'to amend the Judicial Code to place constables (whose function is law enforcement and thus makes them members of the executive branch) under the supervisory authority of this Court; This Court ruled that Act 147 was unconstitutional, explaining: As a peace officer, and as a process server, a constable belongs analytically to the executive branch of government, even though this job is obviously related to the courts. It is the constable’s job to enforce the law and carry it out, just as the same is the job of district attorneys, .sheriffs, and the police generally. Act 147 is unconstitutional and violates the separation of powers doctrine in our Constitution because it attempts to place constables within the judicial branch of government and under the supervisory-power of the judicial branch.... Personnel whose central functions and activities partake of exercising executive powers cannot be arbitrarily made part of another branch of government whose functions they do not perform. Id. at 990 (citations omitted). An interpretation of “judicial agency” under the RTKL that includes district attorneys and their offices as parts of the unified judicial system would violate the separation of powers doctrine, as it would constitute an attempt by the General Assembly to place members of the executive branch of government (district attorneys) within the judicial branch.of government subject to this Court’s general supervisory and administrative authority. This Court, however, has ruled that Pennsylvania courts have no power of review over the actions of the executive branch involving acts of discretion in the absence of bad faith, fraud, capricious action or abuse of power.[6] Pennsylvania Social Services Local 668 v. Pennsylvania Labor Relations Board, 481 Pa. 81, 392 A.2d 256 (1978) (“nor will [courts] inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution”) (citing United States v. Sanchez, 908 F.2d 1443, 1445 (9th Cir. 1990) (“[s]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion”); see also Commonwealth v. Buonopane, 410 Pa.Super. 215, 599 A.2d 681, 684 (1991) (“Not only did the trial court abuse its discretion in granting appellee’s pretrial motion, it never had the discretion to determine whether the Commonwealth should have proceeded with the prosecution as a capital case in the first place.”). For these reasons, I concur in the Majority’s decision to affirm the decision of the Commonwealth Court, but I cannot join in its reasoning. Justice Dougherty joins this concurring opinion. . In Commonwealth v. Fithian, 599 Pa. 180, 961 A.2d 66 (2008), this Court looked to the definition of "judicial district" in-the Judicial Code when construing the phrase "within the same judicial district” in Pennsylvania’s compulsory joinder rule, 18 Pa.C.S, § 110. Fithian, 961 A.2d at 71. The Judicial Code defines a "judicial district” as a."district established by section 901” of the Judicial Code. 42 Pa. C.S. § 102. Far different from the present case, section 901 constitutes the best, and perhaps only, authoritative source for the term "judicial district," as in that provision the General Assembly created Pennsylvania’s sixty judicial districts, in accordance with the legislative authority to do so granted under Article V, Section 11 of the Pennsylvania Constitution. Pa. Const, art. V, § ,11, . Bray v. McKeesport Hous. Auth., 114 A.3d 442, 446 n.5 (Pa. Commw. 2015) (defining a housing authority as a “local agency” for purposes of the Local Agency Law, 2 Pa.C.S. § 752, by reference to the definition Of “Commonwealth government” in the Judicial Code); Frazier v. Phila. Cnty. Office of Prothonotary, 58 A.3d 858, 859-60 (Pa. Commw. 2012) (defining “unified judicial system” in the definition of "judicial agency” under the (continued...) RTKL by reference to the definition in the Judicial Code); Court of Common Pleas of Lackawanna Cnty. v. Pa. Office of Open Records, 2 A.3d 810, 813 & n.6 (Pa. Commw. 2010) (holding that the director of the office of domestic relations of a court of common pleas was “administrative staff” of the court and thus a "judicial agency” under the RTKL). It is notable that the Commonwealth Court borrowed the definitions without a hint of recognition of the prohibition in Judicial Code and the PRJA against doing so. . As an alternative argument, Parks Miller contends that we should recognize her office as a "judicial agency” under the RTKL because she and her office “operate almost exclusively within the confines of the court system” and thus are “part of a ‘team’ compromised of judges, court staff, lawyers, clerks, etc. that, taken as a whole, serve the 'unified judicial system.’" Parks Miller’s Brief at 24. As part of this "team,” Parks Miller insists that her office “becomes part of the greater 'system' of justice, not as a member of the ‘judiciary,’ but as an indispensable entity or office that serves the whole system, which this Court calls ‘the unified judicial system.’ ” Id. at 25. I reject out-of-hand Parks Miller's notion that district attorneys and the judiciary are on the same "team.” It dangerously conflates those charged with asserting and prosecuting criminal charges on behalf of the citizens of this Commonwealth, i.e„ district attorneys, with those charged with overseeing and adjudicating those charges through the impartial administration of justice, i.e., the judiciary. Parks Miller’s highly generalized view of the unified judicial system misconstrues the role of district attorneys in our constitutional system. . Section 1402(a) of the County Code provides, in relevant part: "The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county for which he is elected, and perform all the- duties which, prior to May 3, 1850, were performed by deputy attorneys general.” 6 P.S. § 1402(a). . In its amicus brief, the ACLU of Pennsylvania advises that the RTKL has been a critical tool in obtaining information about; and accountability for, decisions made by district attorneys. ACLU-PA Brief at 15. The ACLU-PA specifically references its dependence on information relating to district attorneys’ practices relating to the interpretation and application of criminal statutes, including the enforcement of civil asset forfeiture laws. Id. at 16 & nn.9-10. • . As such, I reject Parks Miller's contention that she and the attorneys working in her office are already subject to this Court’s supervisory powers because they must abide by this Court's Rules of Professional Conduct and may be reported to the Disciplinary Board for any failures to do so. Parks Miller’s Brief at 22-23. Parks Miller fails to distinguish between this Court's authority to license and discipline all attorneys practicing law in this Commonwealth and our lack of supervisory power over the discretionary acts of prosecutors.